UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GRAPHIC PACKAGING
INTERNATIONAL, INC.,

        Case No. 4:06-CV-74

    Plaintiff,

v.        Hon. Richard Alan Enslen

UNITED STEEL, PAPER AND
FORESTRY, RUBBER MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND
SERVICE WORKERS INTERNATIONAL
UNION, LOCAL 6-1010,

        **OPINION**

    Defendant.
_____/

      This matter is before the Court on competing summary judgment motions of Plaintiff Graphic Packaging International, Inc. ("Graphic Packaging") and Defendant United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 6-1010 ("the Union").[1]  Oral argument is unnecessary in light of the briefing and the issues for review.  *See* W.D. Mich. L. Civ. R. 7.2(d).

      This is the story of how a company intends to short-change a long-term employee with accumulated pension rights out of the largest part of her pension benefits.  Now that the matter has been grieved and the Arbitrator has resolved it to correct the miscalculation, Graphic Packaging urges technical arguments against the arbitration award.  Those technical arguments are unavailing.

---

    [1]The Union indicates in its Answer that the case is mis-captioned in that its parent International Union, the AFL-CIO/CLC union, rather than a local bargaining unit, is the true party in interest.  Notwithstanding, the older designation is being used in these documents because the case caption has not been formally amended and because the case documents, including the Collective Bargaining Agreement, refer to the earlier party name.

**BACKGROUND**

This suit was filed by Plaintiff Graphics Packaging on June 21, 2006. The Complaint, stated in two counts, requests that the Court set aside an arbitration award entered on March 23, 2006 against Plaintiff. The arbitration award relates to the years of service which are to be credited to Grievant Deb Unruh in connection with her vested benefits to be paid from the Graphic Packaging Retirement Plan. (Compl., Ex. 1.)

The relevant Collective Bargaining Agreement between the parties governs their rights between January 26, 2003 and January 25, 2008. (Answer, Ex. 1.) Exhibit B to the Collective Bargaining Agreement discusses the rights of the parties regarding pension benefits. It provides in pertinent part that

> Credited service includes all service from the first of the month following (or coincident with) the employee's latest hiring date to the end of the month in which the employee retires, or in which his employment is terminated before retirement. . . . .

(*Id.* at 105.)

It is further provided:

> This Exhibit B is a brief outline of your Graphic Packaging Retirement Plan. The Official Plan Document and Supplemental govern the operation of the Plan and the payment of benefits; however, the benefits set forth in this Exhibit B are not subject to unilateral modification during the terms of this agreement unless required by law.

(*Id.* at 109-10) (emphasis added.) The benefits discussed in Exhibit B included the requirement that the Plan "will provide pension benefits for each eligible employee who retires based upon the following per month amount per year of credited service."[2] (*Id.* at 107) (emphasis added.)

---

[2]Plaintiff argues in part that this provision does not affect the calculation of pension benefits because the Retirement Plan used a separate term, "Benefit Service" to define the rights of Retirement Plan beneficiaries. This difference in terminology only reflects the history of the drafting, not an intent by the parties to the Collective Bargaining Agreement, to enter into

Article VII of the Collective Bargaining Agreement governs the grievance procedure. Section 1 of the Article provides that "All differences as to the meaning and application of the provisions of the Agreement . . . shall be taken up as hereinafter set forth." (*Id.* at 37.) The Article then provides a four-stage grievance system, the final step of which is to submit the grievance to binding arbitration by the American Arbitration Association. (*Id.* at 39.) The decision of an arbitrator is deemed final and binding under the Agreement. (*Id.* at 40.)

Grievant Deb Unruh has been employed at the Kalamazoo Mill locations of Plaintiff, and its predecessor companies, since November 13, 1972. (Compl., Ex. 1 at 19.) She had requested from Graphics Packaging a pension benefit calculation in 1997; she was not satisfied with the calculation because it provided that her service began in 1980. (Arbitration Hr'g Tr. 30-31.) Unruh then requested another benefit computation in 2003, which gave her credited service from her initial hiring on November 13, 1972. (*Id.* at 34-35, 41.) A year later she requested a third benefit calculation, which provided that her credited service for pension purposes began effective February 1, 1992. (*Id.* at 20, 37-41.) These contradictions by the company were not explained; its position, as explained during the grievance hearing, was that the predecessor company's numbers (which assumed an unexplained break-in-service in 1992) were binding on the company. (*Id.* at 22.)

This greatly reduced computation was based upon a term within the Graphic Packaging Retirement Plan. The Plan stated in Article II, section 2.2 that, "An Employee whose Accrued Benefit is transferred to the Plan from the Fort James Retirement Plan shall receive credit for service

---

provisions which would, on Plaintiff's readings, make the terms "credited service" unenforceable and merely descriptive.

3

taken into account under the Fort James Retirement Plan prior to August 2, 1999." (Pl.'s Mot. for Summ. J., Ex. A at 73.)

It was not intended, however, that the Retirement Plan assume, without correction, mistakes in the Fort James Retirement Plan's accounting. This is known for several reasons. First, the Asset Purchase Agreement which worked to transfer the assets of the Fort James Retirement Plan contained a provision for sharing costs as to pension accountings which were to be later corrected. (Compl. Ex. 1, at 18 n.5.) Second, Graphic Packaging did correct some four other employee benefit service calculations which were mistaken. (Arbitration Hr'g Tr. 24.) Third, a pension plan, in order to be a qualified plan for E.R.I.S.A. and Internal Revenue purposes, must provide credit to employees for periods of "service" during which the employer was required to contribute to pension benefits based upon such service. *See Williams v. Caterpillar, Inc.*, 944 F.2d 658, 663 (9th Cir. 1991) (citing statutory provisions requiring service be properly credited); *Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 927 (9th Cir. 1986) (same); *see also* 29 U.S.C. § 1053 (setting forth minimum standards for vesting of nonforfeitable employee benefits); 26 U.S.C. § 401(a) (requiring a plan to comply with 26 U.S.C. § 411 vesting standards to qualify for favorable tax treatment); 29 U.S.C. § 1002(19) (stating that "nonforfeitable" definition affecting pension plans relates to employee "service"); 29 U.S.C. § 1054(b)(1) (stating benefit accrual requirements based on service); 29 U.S.C. §§ 1081-86 (stating minimum funding requirements).[3] A plan which openly adopts make-believe numbers or fails to correct make-believe does not comply with those requirements.

---

[3] It is true that 26 U.S.C. § 401(12) does contain a separate provision which requires that a qualified plan shall, prospectively, provide, in the event of merger, the transfer of assets to a new plan shall not result in a lesser benefit to the affected employees. This provision, however, does not authorize a knowing miscalculation based upon a previous miscalculation.

When Graphic Packaging purchased the assets and operations of the Fort James company in 1999, the credited service for past employees was done by using the calculations of the predecessor company recorded in connection with an Asset Purchase Agreement. (Arbitration Hr'g Tr. 22, 39.) No effort had been made by Graphic Packaging to double-check the accuracy of the pension service records with the Union or employees at the time of the transfer of the Fort James Retirement Plan assets. (*See* Compl., Ex. 1 at 30.) Those calculations, for reasons which are unknown, gave the Grievant credit only from 1992.[4] (*Id.*) The company witness called during the arbitration hearing admitted that the pension figures were based on Fort James' account summaries and that the company lacked employment records to support those numbers. (Arbitration Hr'g Tr. 88.)

Upon review of the proofs, the Arbitrator found that those calculations were simply mistaken since the employee began work on November 13, 1972 and had no breaks in service until her forthcoming retirement. (Compl., Ex. 1 at 29.) At the time of the grievance hearing, the employee had not retired so the benefit dispute procedures of the Retirement Plan were not applicable or germane. (*Id.* at 28; *see also* Ret. Plan § 13.2.)

On January 11, 2006, the Union, having exhausted the grievance process, tendered this dispute to the Arbitrator at a hearing held in Kalamazoo, Michigan. (Arbitration Hr'g Tr. 1.) Graphic Packaging then submitted some five legal and factual issues to the Arbitrator; these issues

---

[4]The purchase agreement does provide evidence as to the extent of funding provided between the respective companies to the Pension Plan and their various obligations, *vis-a-vis* one another and the Plan, but since the Collective Bargain Agreement created other obligations of the company to fund pension benefits, the company has sole responsibility to the Plan and the eligible employees to fund the benefit levels required by the Collective Bargaining Agreement. That is, the company must provide both the benefit levels, including years of service, required by the Plan and must fund the pension to ensure the payment of the benefits promised in Exhibit B to eligible employees. The company may, of course, seek contribution from the predecessor company for under-funding as contemplated by the purchase agreement.

included whether the matter was arbitrable under the Collective Bargaining Agreement and whether the non-exhaustion of the Pension Plan dispute procedures precluded arbitration. (*Id.* at 4-5.)[5]

On March 23, 2006, the Arbitrator issued her Opinion and Award. The Arbitrator determined both the arbitration issues and contract issues against Graphic Packaging. Therefore, the Arbitrator issued an Award required the following:

> The Company is to immediately correct the Grievant's credit date for benefit purposes, including pension, to her original date of hire, November 13, 1972, which also is her last date of hire.

(Compl., Ex. 1 at 31.)

On July 19, 2006, Defendant filed its Answer, Affirmative Defenses and Counterclaim. The Counterclaim, like the Complaint, is premised on the Court's authority under the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. Defendant requested a judgment confirming and enforcing the arbitration award, ordering the payment of past due benefits since April 1, 2006, plus prejudgment interest, and requiring the payment of attorney fees.

**LEGAL STANDARDS**

The competing Motions for Summary Judgment are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty*

---

[5]Plaintiff did express, in post-hearing briefing, a reservation as to whether these matters should be decided by the Arbitrator, though the Arbitrator treated those reservations as belatedly made and effectively waived. (Arbitrator's Op. & Award at 25-26 & n.7.)

*Lobby*, 477 U.S. 242, 248 (1986).  If the non-moving party fails to show the existence of a material disputed fact, summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 323.

Summary judgment is routinely granted in LMRA cases given the legal context of these disputes.  This context was explained by the United States Supreme Court as follows:

> Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited.  Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement.  *Paperworkers v. Misco, Inc.,* 484 U.S. 29, 36 . . . (1987).  We recently reiterated that if an " 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.' "  *Eastern Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 62, . . . (2000) (quoting *Misco, supra,* at 38, 108 S.Ct. 364).  It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense [s] his own brand of industrial justice" that his decision may be unenforceable.  *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 . . . (1960).

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

These standards eliminate most factual disputes in LMRA cases.  The sole remaining question, which is legal in nature, is whether the arbitrator exceeded the authority delegated under the labor contract.  *See Spero Elec. Corp. v. Int'l Bhd. of Elec. Workers*, 439 F.3d 324, 328 (6th Cir. 2006) (holding that authority of arbitrator was question of law) (citing *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7,* 114 F.3d 596, 600 (6th Cir. 1997)).

**LEGAL ANALYSIS**

Graphic Packaging's Complaint, and briefing, presents two legal issues for analysis:  first, whether this dispute is subject to arbitration in light of the terms of the Collective Bargaining Agreement and the Pension Plan (Compl. ¶¶ 26-39); and second, whether the authority of the Arbitrator "drew its essence" from the Collective Bargaining Agreement.  (*Id.* at ¶¶ 40-58.)

**1. Arbitration**

As outlined in Graphic Packaging's Complaint and other briefing, the question of whether this dispute is subject to arbitration relates to two separate sub-issues: first, whether the arbitration issue has already been resolved in a binding matter by submission to the arbitrator; and second, if not, then whether the Collective Bargaining Agreement intended that a dispute as to a grievant's credited pension service be subject to determination by arbitration.

On the first point, the leading case is the Supreme Court's decision in *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986). That case involved a company that was compelled to arbitrate a dispute with its union, including as to the issue of whether the dispute was within the jurisdiction of the arbitrator. On review, the Supreme Court then announced several related principles: "The first principle . . . is that 'arbitration is a mater of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" *Id.* at 648, quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). The second rule is that, "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649. The third rule is that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits . . . ." *Id.* The final principle from this case is that "where the contract contains an arbitration clause, there is a presumption of arbitrability . . . [and] '[d]oubts should be resolved in favor of coverage.'" *Id.* at 650, quoting *Warrior & Gulf*, 363 U.S. at 582-83.

Notwithstanding the above principles, there is an additional principle of federal law which applies in this Circuit as to those cases in which the parties have, voluntarily, submitted the issue of

8

arbitrability to the arbitrator for decision. This rule of law was stated by the Sixth Circuit in the *Vic Wertz* case as follows:

> In the present case, the parties submitted the issue of arbitrability to the arbitrator rather than reserving the question for initial determination by the court. Agreement to have the arbitrator decide the issue of arbitrability "may be implied from the conduct of the parties in the arbitration setting." *George Day,* 722 F.2d at 1475. Because the parties "clearly and unmistakably" submitted the issue of arbitrability to the arbitrator without reservation, we will review the arbitrator's decision on arbitrability under the same deferential standard employed when reviewing an arbitrator's ruling on the merits. Therefore, the arbitrator's decision on arbitrability will be affirmed "unless it fails to 'draw its essence from the collective bargaining agreement.'" *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890, 891 (6th Cir. 1989).

*See Vic Wertz Distrib. Co. v. Teamsters Local 1038,* 898 F.2d 1136, 1140 (6th Cir. 1990).

Additionally, the Sixth Circuit case law on the rule of the *Vic Wertz* case was recently further explained by the Sixth Circuit as follows:

> In this circuit, however, although a court is usually the proper venue for decisions about arbitrability, if the parties "clearly and unmistakably" submit the issue to the arbitrator "without reservation," then the parties have waived their right to have a court make the decision. *See Vic Wertz Distrib. Co. v. Teamsters Local 1038,* 898 F.2d 1136, 1140 (6th Cir. 1990); *see also Interstate Brands Corp. v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135,* 909 F.2d 885, 890 (6th Cir. 1990).
>
> In *Interstate Brands,* the union filed a grievance related to the dismissal of one of its members. The company participated in the arbitration proceedings on the issue of arbitrability as well as the merits, but later complained that the issue of arbitrability was a question for the court. *Interstate Brands,* 909 F.2d at 890. The court, relying on *Vic Wertz,* held that an agreement to have the arbitrator decide the issue of arbitrability will be implied where the parties did not bring the issue to the district court in the first place. *Id.* Thus, the company waived its right to have the court decide the arbitrability question by participating in the arbitration proceedings. *Id.*
>
> In *First Options,* a case cited by Cleveland Electric in support of its argument, the Supreme Court held that deference to an arbitrator's decision on arbitrability is not necessary unless there is evidence of a clear and unmistakable willingness to arbitrate the issue. *First Options,* 514 U.S. at 944, 115 S. Ct. 1920. However, *First Options* did not involve a union or a collective bargaining agreement, so there was no underlying agreement between the parties providing for arbitration. The issue was whether private parties could be forced to

9

> arbitrate the issue of arbitrability just because they filed a brief with the arbitrator objecting to the arbitrator's jurisdiction. *Id.* at 946, 115 S. Ct. 1920. The Supreme Court found that the objecting party (the Kaplans) forcefully opposed the arbitrator deciding whether they had to arbitrate their dispute, and the arbitrator's ruling, therefore, was entitled to a court's independent review. *Id.* at 946-47, 115 S. Ct. 1920.
>
> The circumstances in this case are more like those in *Interstate Brands* than *First Options.* Cleveland Electric submitted the question of arbitrability to the arbitrator for his determination, and we can find nothing in the record to indicate that Cleveland Electric wanted to reserve the question of arbitrability for the court. The district court found, and this court agrees, that Cleveland Electric waived the issue of who had the power to decide the arbitrability of the retirees' grievance by submitting the matter to arbitration "without reservation."

*Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am.*, 440 F.3d 809, 813-15 (6th Cir. 2006).

This case, like the *Cleveland Elec.* case, involves the voluntary conduct of a company in submitting for arbitration a dispute arising out of an collective bargaining agreement. It also involves the voluntary submission of not only the merits issue (the extent of pension credit service), but the scope of arbitration to the arbitrator. The company's legal representative was asked at the commencement of arbitration which issues were being submitted and he responded that both the merits issue and arbitrability of the dispute were being submitted. (Arbitration Hr'g Tr. 4-5.) This submission was effective in delivering these issues to the arbitrator for final decision, particularly since the arbitration clause of the Collective Bargaining Agreement created the expectation that such matters would be submitted to the arbitrator. The holdings in the *Cleveland Elec.* and *Vic Wertz* cases apply to this matter.

Notwithstanding, the Court also makes an alternative finding as to arbitration. That is, even assuming that the arbitrator's decision on arbitration is not binding due to the Supreme Court's holding in the *First Options* case or because the post-hearing brief reserved the issue for judicial

determination, the Court would nevertheless determine upon examination of the arbitration issue that both the merits issue and the arbitration issue were subject to the provisions of the Collective Bargaining Agreement requiring arbitration. The arbitration clause placed within the ambit of arbitration, "All differences as to the meaning and application of the provisions of the Agreement . . . ." This is a broad clause and it made subject to arbitration both the duty to arbitrate and the extent of pension service credits described in Exhibit B to the Agreement. As to Exhibit B, since the Collective Bargaining Agreement included a promise that the extent of benefits would not be unilaterally modified and be guaranteed to the extent promised in Exhibit B, including both a years of service component and a monthly benefit level component, these terms were properly submitted to arbitration. The general rule from *Warrior & Gulf* favors arbitration of disputes and requires submission of all such issues to the arbitrator. It likewise requires that the parties live with the solution crafted by the arbitrator.

Graphic Packaging argues that the Collective Bargaining Agreement's reference to the Plan and Supplemental as "controlling" prevents arbitration of this grievance. This language, as noted above, contained an express exception for the benefit levels earned by union employees. This exception provided the jurisdiction for the arbitrator to act. This exception distinguishes this case from other cases relied upon by Graphic Packaging. Those cases, unlike this one, did not involve specific collective bargaining language promising that employees would receive guaranteed benefit levels, including credited service. The purpose of that language is very clear given the history of these manufacturing facilities and the changes in ownership–to provide a means for employees to

11

protect, prior to retirement, their vested contractual rights in pension benefits.[6] The pension claim procedures, which only operate when a beneficiary is making a claim for benefits, are not a substitute for those contractual rights, as recognized by the Arbitrator. This history also shows that the contractual protections contained in the Collective Bargaining Agreement were an important aspect of the contract. The interpretation of that language advocated by Graphic Packaging strips of meaning the contract language, which was clearly intended to benefit union employees.

Graphic Packaging has also argued that the Arbitration ignored the terms of the Retirement Plan. One of its arguments in this regard is not based on the Plan language itself, but the language of the Summary Plan Description. This argument fails because the Summary Plan Description was never referenced in the Collective Bargaining Agreement and was not intended by the parties to the Collective Bargaining Agreement to proscribe their rights. Interestingly, the Retirement Plan language itself does not purport to make its dispute procedure exclusive, which is of course consistent with the Collective Bargaining Agreement language providing a separate and complementary arbitration procedure. The cases cited by Graphic Packaging simply were decided on different facts and do not support relief in this instance.[7]

---

[6] This is not surprising in the Union context because, as was the case here, the affected employee was on more than one occasion discharged, then reinstated with a make-whole remedy, intended to insure that the discharge did not affect her pension service. In such a context, the employee must have some ability to ensure that proper records showing continued pension service have been recorded and transmitted to the pension plan trustee.

[7] Graphic Packaging also argues that it is "bad policy" to assign benefit determinations to arbitrators. However, its own argument admits that Congress's E.RI.S.A. legislation expressly permits this when, as was done in this case, a collective bargaining agreement provides for dispute resolution by an arbitrator. (*See* Pl.'s Mem. in Support 16.) The fact that the drafters of the Retirement Plan language did not include a cross-reference in the Plan document to the Collective Bargaining Agreement is not telling since the Retirement Plan was drafted long before such Collective Bargaining Agreement.

For these reasons, and those argued by defense counsel, the Court finds that all of the matters submitted to arbitration were properly within the jurisdiction of the arbitrator to decide.

### 2. The Essence of the Collective Bargaining Agreement

As noted in the *Cleveland Elec.* decision and the prior Supreme Court cases, once a matter is properly submitted to arbitration, the decision of the arbitrator is then to be respected provided the decision itself draws its authority from the Collective Bargaining Agreement itself, as opposed to homespun notions of industrial justice.

The limited inquiry regards:

> "whether the arbitrator's award draws its 'essence' from the terms of the collective bargaining agreement. An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement."

*Spero Elec. Corp.*, 439 F.3d at 328 (quoting *Beacon Journal Pub. Co.,* 114 F.3d at 600).

Graphic Packaging's arguments in this regard reiterate the arguments rejected above. The Collective Bargaining Agreement provided union members with a substantive protection of their pension benefits. The Collective Bargaining Agreement also provided union members with grievance and arbitration remedies as a means of redressing situations exactly like this one. The terms of the Collective Bargaining Agreement are complementary to the Retirement Plan and Supplemental and do not contradict it, nor violate other federal law. As such, the Court finds that the award "draws its essence" from the Collective Bargaining Agreement and must be confirmed pursuant to the LMRA, 29 U.S.C. § 185.

### 3. Prejudgment Interest and Attorney Fees

The Union, as noted above, is entitled to a judgment confirming the Award. It additionally requests an award of prejudgment interest and attorneys fees. While the requests for other relief were well supported, these requests are not.

The Union's request for prejudgment interests depends on the factual premise that the affected employee lost the benefit of pension funds during the relevant time period. However, the record does not support this conclusion. As of the date of the Grievance, as demonstrated by the Grievance Opinion and Award, the employee had not applied for pension benefits. (Compl., Ex. 1 at 28.) Further, although an unsupported request is made by the Union for prejudgment interest on unpaid pension benefits from April 1, 2006 (*see* Counterclaim, *ad damnum* clause), the only evidence of record is that, as of that time, the Grievant had not submitted an application for retirement benefits to the Plan. (Second Decl. of Rosa Barnes ¶ 3.) As such, the record does not support an award of prejudgment interest.

As for attorney fees, attorney fees are not routinely awarded in LMRA cases. Rather, they are reserved for those cases in which the defenses are pursued in bad faith. *Wilson v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 83 F.3d 747, 754 (6th Cir. 1996). While the gross miscalculation of pension benefits and failure to correct the same does constitute some evidence of bad faith by the employer, the Court must acknowledge that Plaintiff's counsel presented complex legal arguments supporting its position. Given the complexity of such arguments, Plaintiff's litigation tactics cannot be described as made in objective bad faith. As such, attorney fees are unwarranted.

## **CONCLUSION**

Judgment shall entered denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment, excepting the requests for prejudgment interest and attorney fees.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>January 22, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |